THE VILLAGES AT RED BRIDGE, LLC, Petitioner v. J. BRENT WEISNER, in his capacity as Cabarrus County Tax Administrator, Respondent

No. COA10-723

(Filed 15 February 2011)

**1. Taxation— property valuation—challenge—writ of mandamus —not available**

The trial court did not err by dismissing plaintiff's petition for a writ of *mandamus* to change a property tax valuation where petitioner did not timely challenge the change in valuation of the property before the county board of equalization and review and did not pursue a second means of redress by paying the taxes and bringing a suit for recovery. *Mandamus* is not intended to rescue parties who have allowed the time for their actions to run.

**2. Taxation— property valuation—challenge—statute not applicable**

The plain language of N.C.G.S. § 105-325 suggests that the statute was intended to provide a route for a county tax assessor to correct a property valuation and does not provide an additional remedy to a taxpayer contesting the valuation.

Appeal by petitioner from order entered 17 December 2009 by Judge Tanya T. Wallace in Cabarrus County Superior Court. Heard in the Court of Appeals 30 November 2010.

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by James E. Scarbrough, for petitioner-appellant.*

*Richard M. Koch, Cabarrus County Attorney, for respondent-appellee.*

BRYANT, Judge.

Where a party fails to exhaust the administrative remedies provided by statute, it may not seek a writ of mandamus as an alternative route to judicial review, and a trial court properly dismisses the party's petition for lack of subject matter jurisdiction.

*Facts*

This case concerns a dispute over property tax valuations. Petitioner, The Villages at Red Bridge, L.L.C., owns a forty-acre tract of land ("the property") in the town of Locust in Cabarrus County which it intended to subdivide into one hundred sixteen residential lots. In September 2007, the subdivision administrator of Locust approved and signed a plat for the subdivision, and the plat was recorded with Cabarrus County. Under N.C. Gen. Stat. § 105-285(d), the ad valorem tax value for real property is determined as of 1 January of the year of a general reappraisal. On 1 January 2008, the date of revaluation here, no lots had been sold or were for sale on the property, but the subdivision was under development. Specifically, some of the interior streets had been constructed and some lots had been partially cleared. However, there were no utilities and the subdivision was accessible from the main road only by four-wheel drive vehicles. Respondent J. Brent Weisner, in his capacity as Cabarrus County Tax Administrator, classified the forty acre tract as 116 separate tax parcels with tax values ranging from $70,000.00 to $126,000.00.

Cabarrus County mailed notices of changes in tax value to taxpayers in early 2008, but petitioner contends it never received notice regarding the property. Taxpayers have the right to challenge changes in tax valuation at any point up until the county board of equalization and review adjourns; after adjournment, taxpayers are permitted to appeal changes only within thirty days of notice of a change in valuation. In 2008, the board adjourned in early May; petitioner did not appeal its change in valuation prior to that time. Petitioner contends that it did not learn of the change in valuation until October 2008; it believed the change in valuation was erroneous. On 13 January 2009,

petitioner filed a petition for writ for mandamus in the superior court, seeking a writ and injunction directing respondent "to report the facts to the board of county commissioners in order that the board may make a decision[.]" By order entered 17 December 2009, the superior court dismissed petitioner's action on grounds that it lacked subject matter jurisdiction. Petitioner appeals.

---

In its brief to this Court, petitioner makes fourteen arguments challenging the trial court's dismissal of its petition for writ of mandamus. However, because these arguments are closely related and overlapping, we summarize and address petitioner's arguments below in a single analysis.

*Analysis*

[1] Petitioner argues that it was entitled to seek a writ mandamus in this action and that the trial court erred in concluding that it had failed to exhaust its administrative remedies and in denying its petition. We disagree.

Various provisions of Chapter 105 of our General Statutes provide a detailed process for taxpayers to challenge or appeal property tax valuations. Section 105-322 establishes county boards of equalization and review. N.C. Gen. Stat. § 105-322 (2009). Under subsection g, these boards are entitled to hear appeals by taxpayers:

(2) Duty to Hear Taxpayer Appeals.—On request, the board of equalization and review shall hear any taxpayer who owns or controls property taxable in the county with respect to the listing or appraisal of the taxpayer's property or the property of others

a. A request for a hearing under this subdivision (g)(2) shall be made in writing to or by personal appearance before the board prior to its adjournment. However, if the taxpayer requests review of a decision made by the board under the provisions of subdivision (g)(1), above, notice of which was mailed fewer than 15 days prior to the board's adjournment, the request for a hearing thereon may be made within 15 days after the notice of the board's decision was mailed.

b. Taxpayers may file separate or joint requests for hearings under the provisions of this subdivision (g)(2) at their election.

c. At a hearing under provisions of this subdivision (g)(2), the board, in addition to the powers it may exercise under the provisions

of subdivision (g)(3), below, shall hear any evidence offered by the appellant, the assessor, and other county officials that is pertinent to the decision of the appeal. Upon the request of an appellant, the board shall subpoena witnesses or documents if there is a reasonable basis for believing that the witnesses have or the documents contain information pertinent to the decision of the appeal.

d. On the basis of its decision after any hearing conducted under this subdivision (g)(2), the board shall adopt and have entered in its minutes an order reducing, increasing, or confirming the appraisal appealed or listing or removing from the tax lists the property whose omission or listing has been appealed. The board shall notify the appellant by mail as to the action taken on the taxpayer's appeal not later than 30 days after the board's adjournment.

N.C.G.S. § 105-322(g). Taxpayers unhappy with the results of their appeals to county boards have further administrative remedies as provided in section 105-290, which establishes the Property Tax Commission:

The Property Tax Commission shall hear and decide appeals from decisions concerning the listing, appraisal, or assessment of property made by county boards of equalization and review and boards of county commissioners. Any property owner of the county may except to an order of the county board of equalization and review or the board of county commissioners concerning the listing, appraisal, or assessment of property and appeal the order to the Property Tax Commission.

N.C. Gen. Stat. § 105-290(b) (2009). Subsection (e) further specifies the time for appealing county-level valuations:

A notice of appeal from an order of a board of county commissioners, other than an order adopting a uniform schedule of values, or from a board of equalization and review shall be filed with the Property Tax Commission within 30 days after the date the board mailed a notice of its decision to the property owner. A notice of appeal from an order adopting a schedule of values shall be filed within the time set in subsection (c).

N.C.G.S. § 105-290(e). If a taxpayer, having exhausted his administrative remedies under Chapter 105, is dissatisfied with the decision of the

Property Tax Commission, he may then seek judicial review as provided in N.C. Gen. Stat. § 105-345 (2009).

"North Carolina law provides two avenues by which a taxpayer may seek relief from an unjust property tax assessment: administrative review followed by judicial review in the Court of Appeals, and direct judicial review in Superior or District Court. Administrative review begins in the County Board of Equalization and Review." *Johnston v. Gaston County*, 71 N.C. App. 707, 709, 323 S.E.2d 381, 382 (1984), *cert. denied*, 313 N.C. 508, 329 S.E.2d 392 (1985). To pursue relief via administrative review, a taxpayer follows the steps discussed *supra. Id.* Alternatively, a taxpayer "can seek judicial review of an assessment directly in Superior or District Court by paying taxes and then bringing a suit against the taxing unit for recovery of taxes paid." *Id.* at 711, 323 S.E.2d at 383; *see* N.C. Gen. Stat. § 105-381 (2009). If a taxpayer does not elect to pay the assessed taxes and proceed under section 105-381, he must avail himself of the administrative remedies before the county review board, the Property Tax Commission and, then, the courts of this State. *Id.* at 712, 323 S.E.2d at 384. Our Courts have held that this administrative process provides adequate means for taxpayers to contest valuations "and that [a taxpayer] must exhaust this administrative remedy before he can resort to the courts." *King v. Baldwin*, 276 N.C. 316, 326, 172 S.E.2d 12, 18 (1970) (reviewing previous version of provisions under Chapter 105 which are the same as those currently in place in pertinent aspects).

Here, petitioner acknowledges in its brief that it failed to timely challenge the change in valuation of the property before the county board of equalization and review, and thus, has lost its right to appeal. We agree. Petitioner also chose not to pursue the second means of redress available to it by paying the taxes and then bringing a suit in the trial court for its recovery under section 105-381. Instead, petitioner filed a petition for writ of mandamus in the superior court. Petitioner argues that it was entitled to a writ because respondent made an error in designating the property as individual lots or tax parcels. Petitioner asserts that this error was not a *valuation* error but rather a *classification* error, although it had the result of producing an incorrect valuation of the property. We believe this contention, even if true, is a distinction without a difference. Section 105-322(g)(2) requires the county board to "hear any taxpayer who owns or controls property taxable in the county *with respect to the listing or appraisal of the taxpayer's property* or the property of others." (emphasis added) Likewise, section 105-290(b) states that

the Property Tax Commission "shall hear and decide appeals from decisions *concerning the listing, appraisal, or assessment of property* made by county boards of equalization and review and boards of county commissioners[.]" (emphasis added) Nothing in these statutes or elsewhere in Chapter 105 suggests that an error of the type alleged by petitioner is not covered by these provisions. As the Supreme Court noted in *King*:

> The nature of mandamus and the limitations upon its use have been stated often. It suffices here to say that mandamus issues only to enforce a clear legal right. The writ will not lie to control the discretion vested in a governmental agency or official. It cannot be employed if other adequate means are available to correct the wrong for which redress is sought. Thus, when the legislature has provided an effective administrative remedy, it is exclusive.

*King*, 276 N.C. at 321, 172 S.E.2d at 15 (internal citations omitted). Had it acted in a timely manner as provided by our General Statutes, petitioner could have raised its contentions before the county review board and would have had the opportunity for eventual judicial review. Mandamus is not intended to rescue parties who have allowed the time for their actions to run.

[2] Petitioner also contends that it was entitled to a writ of mandamus pursuant to N.C. Gen. Stat. § 105-325. This statute states that, "[a]fter the board of equalization and review has finished its work and the changes it effected or ordered have been entered on the abstracts and tax records . . ., the board of county commissioners shall not authorize any changes to be made on the abstracts and tax records except as follows" and then provides, in pertinent part:

> (6) Subject to the provisions of subdivisions (a)(6)a, (a)(6)b, (a)(6)c, and (a)(6)d, below, to appraise or reappraise property when the assessor reports to the board that, since adjournment of the board of equalization and review, facts have come to his attention that render it advisable to raise or lower the appraisal of some particular property of a given taxpayer in the then current calendar year.

N.C.G.S. § 105-325 (a)(6) (2009). Petitioner contends that section 105-325(a)(6) provides it an additional remedy in contesting the property's tax valuation and its basis. Specifically, it asserts that it can seek a writ of mandamus to compel respondent to submit "facts"

to the county commissioners in support of its argument regarding errors in the tax valuation, even though respondent does not believe that "facts have come to his attention that render it advisable to raise or lower the appraisal of some particular property of a given taxpayer in the then current calendar year."

We must disagree with petitioner's contention. Were we to accept petitioner's interpretation under § 105-325(a)(6), we would effectively gut the restrictions on timely appeals pursuant to § 105-322(g). Any taxpayer not satisfied with some aspect of his property tax valuation and seeking a reappraisal could ignore the thirty-day requirement under § 105-322(g) and simply seek a writ to compel a county tax assessor to present the contested "facts" to the relevant board of county commissioners. It is illogical to presume that the General Assembly intended this to be the effect of § 105-325(a)(6) when it had already established a mechanism for taxpayers to contest property tax matters. Rather, the plain language of this provision suggests that it is intended to provide a route for a county tax assessor to seek correction based on errors it has discovered.

Here, respondent, the county tax assessor, does not believe that there are any errors that need to be brought to the attention of the county commissioners. It is petitioner, a taxpayer, who seeks redress. Having missed its opportunity to seek relief in its own right, petitioner cannot compel respondent to act on its behalf. Petitioner's arguments are overruled.

Affirmed.

Judges STROUD and BEASLEY concur.